UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAYLA REZVAN,<br><br>            Plaintiff,<br><br>     v.<br><br>PHILIPS ELECTRONICS NORTH AMERICA CORPORATION,<br><br>            Defendant. | Case No. 15-cv-04767-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 40 |

Pending before the Court is Defendant Philips Electronics North America Corporation's motion for summary judgment. Dkt. No. 40 ("Mot."). Plaintiff Layla Rezvan opposed the motion. Dkt. No. 50 ("Opp."). Defendant filed a reply brief in support of the motion. Dkt. No. 52 ("Reply"). The Court held a hearing on September 22, 2016. Dkt. No. 54. After carefully considering each side's arguments and the relevant legal authorities, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion.

I.   **LEGAL STANDARD**[1]

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.*

---

[1] The parties have submitted substantial evidence and declarations associated with this motion. *See* Dkt. Nos. 41, 50-1 to 50-3, 52-1. Instead of summarizing these voluminous materials in a separate facts section, the Court discusses the relevant facts as necessary to decide each claim. In addition, Plaintiff has objected to certain evidence submitted with the reply brief, as well as to portions of the reply brief referring to that evidence. *See* Dkt. No. 53. Plaintiff's objections are denied as moot because this order does not rely upon any of the evidence or portions of the brief to which Plaintiff has objected.

But in deciding if a dispute is genuine, the court must view the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008). "Summary judgment is improper where divergent ultimate inferences may reasonably be drawn from the undisputed facts." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (internal quotation marks omitted); *see also Int'l Union of Bricklayers & Allied Craftsman Local Union No. 20, AFL-CIO v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985) ("Even where the basic facts are stipulated, if the parties dispute what inferences should be drawn from them, summary judgment is improper."). If a court finds that there is no genuine dispute of material fact as to only a single claim or defense or as to part of a claim or defense, it may enter partial summary judgment. *See* Fed. R. Civ. P. 56(a).

With respect to summary judgment procedure, the moving party always bears both the ultimate burden of persuasion and the initial burden of producing those portions of the pleadings, discovery, and affidavits that show the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will not bear the burden of proof on an issue at trial, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Where the moving party will bear the burden of proof on an issue at trial, it must also show that no reasonable trier of fact could not find in its favor. *See Celotex*, 477 U.S. at 325. In either case, the movant "may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence." *Nissan Fire*, 210 F.3d at 1105. "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102-03.

"If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment," because the duty of the courts is not to "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995)). If a nonmoving party fails to produce evidence that supports its claim or defense, courts must enter summary judgment in favor of the moving party. *Celotex*, 477 U.S. at 323.

## II. DISCUSSION

Plaintiff's first four causes of action arise under the Fair Employment and Housing Act ("FEHA"). *See* Dkt. No. 1-1 ("Compl.") ¶¶ 18-26 (disability discrimination); *id.* ¶¶ 27-36 (refusal to accommodate disability); *id.* ¶¶ 37-44 (retaliation); *id.* ¶¶ 45-53 (refusal to engage in interactive process); *see also* Cal. Gov't Code §§ 12900-12996 (West 2016). She also pled causes of action for intentional infliction of emotional distress and for wrongful termination in violation of public policy. Compl. ¶¶ 54-62. In the motion for summary judgment, Defendant has challenged each of these claims, as well as Plaintiff's entitlement to punitive damages. *See* Dkt. No. 40. The Court finds that summary judgment is appropriate only on her claim for intentional infliction of emotional distress.

### A. FEHA Claims

The Court finds that summary judgment is not warranted on any of Plaintiff's FEHA claims, for the reasons described below.

#### i. Qualified Individual and Essential Duties

"[U]nder the FEHA, a plaintiff must demonstrate that he or she was qualified for the position sought or held in the sense that he or she is able to perform the essential duties of the position with or without reasonable accommodation." *Green v. State*, 42 Cal. 4th 254, 267 (2007)

(interpreting Cal. Gov't Code § 12940(a)).[2] As for essential duties, the Ninth Circuit has recognized that "[i]n those jobs *where performance requires attendance at the job*, irregular attendance compromises essential job functions." *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012) (emphasis added) (ADA case). For example, attendance is necessary for jobs requiring teamwork, "face-to-face interaction" (e.g., airline customer service agent, teacher), or the use of onsite items or equipment (e.g., production worker, mechanic). *Id.* at 1237-38; *see also id.* at 1238 ("[Plaintiff's job [as a neo-natal nurse] unites the trinity of requirements that make regular on-site presence necessary for regular performance: teamwork, face-to-face interaction with patients and their families, and working with medical equipment."). However, the Ninth Circuit has recognized that "*on-site presence* is not required for all jobs" because in some exceptional cases the employee is able to adequately execute all work-related tasks from home. *Id.* at 1239 (original emphasis). In a recent district court case denying summary judgment, the court specifically noted in the "essential functions" analysis that "the vast majority of plaintiff's job requirement is accomplished over the computer and phone, which does not require a physical presence in the office or face-to-face contact," and that the plaintiff had successfully worked from home in the past while receiving positive performance reviews. *See Alexander v. Boeing Co.*, No. C13-1369RAJ, 2014 WL 3734291, at *9 (W.D. Wash. July 28, 2014).

      Here, Defendant argues regular onsite attendance was an essential duty of the Contract Manager position that Plaintiff was unable to perform, and therefore, Plaintiff was not a qualified individual. *See* Mot. 15-17. For example, Defendant has proffered evidence that Plaintiff's absences negatively impacted other employees and led to complaints by two other Contract Managers. *See* Dkt. No. 41, Ex. A-2 (Starrett Dep., Ex. 19) (2014 performance review); *id.* Ex. C (Starrett Decl.) ¶¶ 8-9. However, Plaintiff's supervisor has testified that all of the key responsibilities and duties of contract managers, except for face-to-face training, could be

---

[2] This "qualified individual" requirement is also imposed by the Americans with Disabilities Act ("ADA"). *Green*, 42 Cal. 4th at 257-58 ("FEHA requires employees to prove that they are qualified individuals under the statute just as the federal ADA requires.").

4

executed remotely. Dkt. No. 50-3, Ex. 22 (Starrett Dep.) at 125:3-7. Moreover, Defendant allowed another Contract Manager to work from home on a fulltime basis for ten months starting in September of 2014, during which time she had no issues getting her work done and was not asked to report to the office. Dkt. No. 50-3, Ex. 19 (Freedman Dep.) at 48:1-49:19, 50:5-14, 51:14-52:1. Therefore, making all reasonable inferences regarding the evidence in the light most favorable to Plaintiff, the Court finds that there is a genuine dispute of material fact regarding whether regular onsite attendance was an essential duty of the Contract Manager position.[3]

Relatedly, Defendant argues that Plaintiff cannot show that she could have performed the essential functions of her job with a reasonable accommodation. *See* Mot. 17-19; *see also Scotch v. Art Inst. of California-Orange Cty., Inc.*, 173 Cal. App. 4th 986, 994 (2009) (defining reasonable accommodation under FEHA as "a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired" (quoting *Nadaf-Rahrov v. Neiman Marcus Grp., Inc.*, 166 Cal. App. 4th 952, 974 (2008))). Defendant argues that Plaintiff was not performing satisfactorily with two work-at-home ("WAH") days per week, so allowing her additional WAH days would have been unreasonable. *See* Mot. 19. For example, in Plaintiff's performance review for 2014, she was faulted by her supervisor for failing to update contract progress on Visutool at all times, to timely complete peer audits, and to consistently upload documents onto her department's "A" drive so that they were accessible to others. Dkt. No. 41, Ex. A-2 (Starrett Depo., Ex. 19). But Plaintiff argues that her strong performance during her first year establishes that she could perform her job with the reasonable accommodation of more flexibility to work at home. *See* Opp. 14-15. For example, under the supervision of her first supervisor, she was provided a more flexible work schedule and excelled in her job, as evidenced by her receipt of a positive performance review for 2013 and subsequent raise and bonus. *See* Dkt. No 50-3, Ex. 3 at PHILIPS 000008 (stating that Plaintiff had a "great first year" and "far exceeded expectations"); Dkt. No. 50-3, Ex. 4 (reflecting $2,910 raise and $7,866 bonus). Therefore, drawing all reasonable inferences in Plaintiff's favor, there is a genuine

---

[3] As to this and all other issues discussed in this order, the Court expresses no opinion as to which side is likely to prevail at trial or as to the ultimate strength of either party's position.

1  dispute of material fact as to (1) whether Plaintiff could have performed the essential functions of
2  her position with increased flexibility to work from home, and (2) whether that increased
3  flexibility would have been a *reasonable* accommodation.

### ii.  Reasonable Accommodation

"The hallmark of FEHA is the flexibility it requires of employers to work with its disabled employees to accommodate their needs." *Prilliman v. United Air Lines, Inc.*, 53 Cal. App. 4th 935, 953 (1997). "Under the FEHA, an employer that fails to make reasonable accommodation for an employee's known physical disability engages in an unlawful employment practice." *A.M. v. Albertsons, LLC*, 178 Cal. App. 4th 455, 463 (2009); Cal. Gov't Code § 12940(m)(1) (same principle); Cal. Code Regs. tit. 2, § 11068(a) (2016) (same principle). To trigger these protections, an employee need not mention the statute, the term "accommodation" or any other "magic words." *Prilliman*, 53 Cal. App. 4th at 954 (1997). In fact, once the employer is aware of the disability, the affirmative duty to make a reasonable accommodation arises even if the employee has not specifically requested such an accommodation. *Id.* Even where a disabled employee has been accommodated in the past, a single failure to accommodate may be actionable. *Albertsons*, 178 Cal. App. 4th at 464-65. Under California regulations, a "[r]easonable accommodation may include . . . [p]ermitting an employee to work from home." Cal. Code Regs. tit. 2, § 11065(p), (p)(L) (2016). Moreover, "[w]hen an employee can work with a reasonable accommodation other than a leave of absence, an employer may not require that the employee take a leave of absence." *Id.* § 11068(c).[4] Ultimately, the reasonableness of an accommodation is usually an issue for the jury. *Prilliman*, 53 Cal. App. 4th at 954.

Here, Plaintiff has put forward evidence that her former manager (Messelaar) informed her new manager (Starrett) that Plaintiff had rheumatoid arthritis and was receiving a second WAH day as an accommodation. Dkt. No. 50-3, Ex. 22 (Starrett Dep.) at 146:12-147:3. Plaintiff has

---

[4] The case cited by Defendant does not hold to the contrary, as it simply stands for the unremarkable proposition that medical leave *may* constitute a reasonable accommodation. *See Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999). Moreover, the plaintiff in *Nunes* was *unable* to work during her medical leave. *See id.* That is precisely the opposite of the circumstance addressed by the California regulation. *See* Cal. Code Regs. tit. 2 § 11068(c) (prohibiting forced leave when the employee is *able* to work with a reasonable accommodation).

6

declared that she repeatedly requested that Starrett permit her to work from home when suffering from severe pain or an infection relating to her rheumatoid arthritis, and that Starrett repeatedly refused these requests—stating that "WAH is not a replacement for sick time" and that when Plaintiff was "too sick to come into work," she was required to stay home and not work. Dkt. No. 50-1 (Rezvan Decl.) ¶ 12.[5] For example, Plaintiff has introduced her November 24, 2014 email to her supervisor (Starrett), her former supervisor (Messelaar), and an HR employee (Kathleen Conway), entitled "Excessive Absences," stating in part, "As we discussed I have Rheumatoid Arthritis. . . . Due to the medications I take, my body has a very tough time fighting off infections . . . . I am happy to get you ANY and ALL documentation you need for a Reasonable Accommodation for this." Dkt. No. 50-3, Ex. 6 at REZ00033. Plaintiff has declared that Starrett responded by "refus[ing] to grant me any accommodation, instead insisting that I stay home and take time off work." Dkt. No. 50-1 (Rezvan Decl.) ¶ 15; *see also* Dkt. No. 50-3, Ex. 22 (Starrett Dep.) at 159:11-16 (stating that after November 24, 2014, Starrett never gave Plaintiff an accommodation to work at home due to her rheumatoid arthritis). Plaintiff has also introduced evidence that, on April 14, 2015, Starrett ordered her to stay home and *not* work after Plaintiff asked to work from home. Dkt. No. 50-1 (Rezvan Decl.) ¶ 15; Dkt. No. 50-3, Ex. 22 (Starrett Dep.) at 136:14-138:12 & Ex. 12.

On the other hand, Defendant has introduced a spreadsheet prepared by Plaintiff's supervisor in preparation for a meeting regarding her termination. *See* Dkt. No. 41, Ex. C (Starrett Decl.) ¶ 11; *id.* Ex. C-5. The spreadsheet documents Plaintiff's excuses for missing or being late to work twenty-two times between January 22, 2015 and June 18, 2015—and many of these excuses appear unrelated to rheumatoid arthritis. *See* Dkt. No. 41, Ex. C (Starrett Decl.) ¶ 11; *id.* Ex. C-5. Defendant has also put forward evidence that the HR department referred Plaintiff to the company's administrator for intermittent FMLA leave, which Plaintiff declined. Dkt. No. 40-1,

---

[5] "The district court can disregard a self-serving declaration that states only conclusions and not facts that would be admissible evidence." *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015). However, even "self-serving" declarations cannot be ignored at summary judgment if they are "based on personal knowledge, legally relevant, and internally consistent." *See id.* at 498. The Court properly considers statements of the latter variety from Plaintiff's declaration.

Ex. A-1 (Rezvan Dep.) at 273:16-274:15; Dkt. No. 50-3, Ex. 8 at PHILIPS 000193-95; Dkt. No. 50-1 (Rezvan Decl.) ¶ 14.

Viewing the evidence in the light most favorable to Plaintiff, there is a dispute of material fact regarding whether Defendant was on notice of Plaintiff's request or had knowledge of her need for an accommodation to work from home when her rheumatoid arthritis made her too sick to work onsite, and whether Defendant rejected that accommodation. And as stated above, *see supra* Part II.A.i, there is a dispute of material fact regarding whether such an accommodation was reasonable. On that issue, a reasonable fact finder would not be barred as a matter of law from concluding that Plaintiff's requested accommodation was reasonable, since working from home is a reasonable accommodation explicitly envisioned by the California regulations. *See* Cal. Code Regs. tit. 2, § 11065(p), (p)(L). Moreover, it would be premature for the Court, at this stage, to conclude that offering FMLA was a reasonable accommodation as a matter of law: if the fact finder were to conclude that Plaintiff was able to perform the essential functions of her position (which remains a possibility, *see supra* Part II.A.i.), then it plausibly could find that offering her FMLA leave would not amount to a reasonable accommodation. *See* Cal. Code Regs. tit. 2, § 11068(c) (prohibiting an employer from requiring an employee to take a leave of absence when she could work with a reasonable accommodation). Given the disputes of material fact described above, and keeping in mind that reasonableness is typically an issue best left for the jury, *see Prilliman*, 53 Cal. App. 4th at 954, the Court finds that summary judgment on Plaintiff's reasonable accommodation claim is not warranted.[6]

### iii. Interactive Process

Under FEHA, it is "an unlawful employment practice for an employer to fail to engage in a good faith interactive process with the employee to determine an effective reasonable accommodation if an employee with a known physical disability requests one." *Albertsons*, 178 Cal. App. 4th at 463; *see also* Cal. Gov't Code § 12940(n) (same principle). Unless the

---

[6] Since the Court's analysis here does not rely on the fact that Plaintiff submitted the Reasonable Accommodation Request form on June 16, 2015, the Court does not address Defendant's arguments that this submission was insufficient to save Plaintiff's reasonable accommodation claim. *See* Mot. 14, 19-20.

8

employee's "disability and resulting limitations are obvious," she has primary responsibility for initiating the interactive process by "'specifically identify[ing] the disability and resulting limitations, and suggest[ing] the reasonable accommodations.'" *Scotch*, 173 Cal. App. 4th at 1013 (ellipsis omitted) (quoting *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 165 (5th Cir. 1996)). However, the employee need not use "magic words" and the interactive process initiates as soon as the employer "becomes aware of the need to consider an accommodation." *Id.* at 1013 (quoting *Gelfo v. Lockheed Martin Corp.*, 140 Cal. App. 4th 34, 62 n.22 (2006)). From that point on, the employer has a "continuous" obligation "to engage in the process in good faith." *Id.* at 1013. The employer "shall either grant the . . . employee's requested accommodation, or reject it after due consideration, and initiate discussion with the . . . employee regarding alternative accommodations." Cal. Code Regs. tit. 2, § 11069(c)(1). Finally, when assessing a claim for failure to engage in the interactive process, courts isolate the cause of the breakdown, assign responsibility, and then hold the employer liable only if responsible for the breakdown. *Nadaf-Rahrov*, 166 Cal. App. 4th at 985.

      Here, Defendant challenges the interactive process claim on the ground that Plaintiff never requested an accommodation beyond working at home two days per week, which Defendant granted. *See* Mot. 20. However, there is a dispute of material fact regarding whether Defendant was on notice of Plaintiff's request or had knowledge of her need for a further accommodation, and regarding whether such an accommodation was reasonable. *See supra* Part II.A.i-ii. If the fact finder were to resolve those disputes in Plaintiff's favor, it plausibly could find that this would trigger Defendant's "continuous" obligation to engage in the interactive process. *See Scotch*, 173 Cal. App. 4th at 1013. In addition, Defendant points to having offered Plaintiff FMLA leave and PTO. *See* Mot. 20. But these offers do not compel summary judgment, given that there is a material dispute of fact regarding the reasonable accommodation. *See supra* Part II.A.ii; Cal. Code Regs. tit. 2, § 11068(c) (prohibiting an employer from requiring an employee to take a leave of absence when she could work with a reasonable accommodation). Lastly, Defendant argues that Plaintiff was responsible for the breakdown of the interactive process because Defendant provided her with the Reasonable Accommodation Request form in April 2015 but she failed to

1  return the form until June 16, 2015, after the decision was already made to fire her.  *See* Mot. 20.

2  However, there is a dispute of material fact regarding whether Plaintiff requested or Defendant

3  was on notice of the need for a further accommodation at least as early as November 24, 2014, and

4  regarding whether Defendant denied that request without offering an alternative accommodation.

5  *See supra* Part II.A.i-ii; *see also* Cal. Code Regs. tit. 2, § 11069(c)(1) (requiring employer to

6  explore alternative accommodations after a denial).  Ultimately, the Court cannot as a matter of

7  law, at this stage, isolate the breakdown of the interactive process or determine which party was to

8  blame, so summary judgment is not warranted.  *See Nadaf-Rahrov*, 166 Cal. App. 4th at 985.

###    iv.    Disability Discrimination

"FEHA makes it an unlawful employment practice to discharge a person from employment or discriminate against the person in the terms, conditions, or privileges of employment, because of physical or mental disability or medical condition."  *Scotch*, 173 Cal. App. 4th at 1002 (citing Cal. Gov't Code § 12940(a)).  In assessing FEHA claims for disability discrimination under a disparate treatment theory, the California courts apply the three-stage burden-shifting test established by the U.S. Supreme Court in the Title VII context.  *See id.* at 1004 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  In *Scotch*, the California Court of Appeal summarized the three steps as follows:

> [T]he plaintiff has the initial burden of establishing a prima facie case of discrimination. . . .  If the plaintiff establishes a prima facie case, then a presumption of discrimination arises, and the burden shifts to the employer to rebut the presumption by producing admissible evidence sufficient to raise a genuine issue of material fact the employer took its actions for a legitimate, nondiscriminatory reason. If the employer meets that burden, the presumption of discrimination disappears, and the plaintiff must challenge the employer's proffered reasons as pretexts for discrimination or offer other evidence of a discriminatory motive.

*Id.* at 1004 (internal citations omitted).  To raise a genuine issue of fact regarding pretext sufficient to overcome summary judgment, the plaintiff "need produce very little evidence of discriminatory motive."  *Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 870 (9th Cir. 1996) (FEHA case) (quoting *Warren v. City of Carlsbad*, 58 F.3d 439, 443 (9th Cir. 1995)).

Here, Defendant argues that Plaintiff's "documented attendance and performance problems" were a legitimate, nondiscriminatory reason for firing Plaintiff, and that Plaintiff cannot

United States District Court
Northern District of California

satisfy the third stage of the burden-shifting test. *See* Mot. 21-22 ("In response to Philips' legitimate reason, Rezvan can present no evidence of discriminatory intent."). For example, Defendant has introduced a spreadsheet documenting that she missed or was late to work twenty-two times during the first half of 2015, *see* Part II.A.ii (discussing spreadsheet), as well a badge scan report revealing that Plaintiff "was frequently not in the Foster City office during her regular working hours on days when she was not authorized to be working from home and required to be in the office." *See* Dkt. No. 41, Ex. C (Starrett Decl.) ¶ 4 & Ex. C-1 (badge scan report from June 1, 2014 to November 21, 2014). In addition, Defendant has proffered evidence that Plaintiff received a negative performance review for 2014, and that her absences negatively impacted other employees and led to complaints by two other Contract Managers. *See* Dkt. No. 41, Ex. A-2 (Starrett Dep., Ex. 19) (2014 performance review); *id.* Ex. C (Starrett Decl.) ¶¶ 8-9.

In contrast, Plaintiff has introduced evidence that, while working a more flexible work schedule under her first supervisor (Messelaar) she excelled, receiving a positive performance review for 2013, a raise, and a bonus. *See supra* Part II.A.i. Plaintiff has also put forward evidence that her second supervisor (Starrett) denied her request to work from home when she was in severe pain from her rheumatoid arthritis or suffering from an infection resulting from her weakened immune system, on the grounds that this was not permitted under the paid time off policy—even though Starrett apparently understood that Plaintiff was not asking for paid time off. *See* Dkt. No. 50-1 (Rezvan Decl.) ¶¶ 11-12; Dkt. No. 50-3, Ex. 22 (Starrett Dep.) at 104:17-25. Finally, Plaintiff has proffered evidence that her productivity suffered because of Starrett's denial of her WAH requests, that her employer's "badge scans" did not accurately capture her attendance at work, that Starrett authored a written warning regarding Starrett's absences as well as her negative performance review, and that Defendant terminated her and then replaced her with a Contract Manager without disabilities. *See* Dkt. No. 50-1 (Starrett Decl.) ¶¶ 16-18, 21; Dkt. No. 50-3, Ex. 22 (Starrett Dep.) at 248:4-249:3, 249:10-250:4.

Based upon the evidence presented, the Court finds that summary judgment is not warranted because there is a genuine dispute of material fact regarding whether Plaintiff was fired for poor attendance and performance, or whether she was fired based on a discriminatory motive.

11

*See Strother*, 79 F.3d at 870 (requiring "very little evidence of discriminatory motive" required to raise a genuine dispute of material fact). In addition, the Court finds that divergent inferences could reasonably be drawn from certain undisputed facts (e.g., she received a negative 2014 performance review), which also precludes summary judgment. *See Fresno Motors*, 771 F.3d at 1125.

### v. Retaliation

Under FEHA, an employer may not "discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part." Cal. Gov't Code § 12940(h). "To establish a prima facie case of retaliation, a plaintiff must show that she engaged in protected activity, that she was thereafter subjected to adverse employment action by her employer, and there was a causal link between the two." *Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 52 (2000) (internal quotation marks omitted). Here, Defendant does not dispute that Plaintiff suffered an adverse action. *See* Mot. 22 (asserting that Plaintiff's claim fails on the first and third elements). Therefore, the only elements at issue are whether Plaintiff engaged in a protected activity and whether there was a causal link between that activity and an adverse action.

#### a. Protected Activity

Plaintiff's complaint asserts retaliation based upon "her protected activity under FEHA, having requested reasonable accommodation for her physical disability." Dkt. No. 1-1 (Compl.) ¶ 39. Although FEHA was amended to protect against retaliation for having requested a reasonable accommodation, this amendment was not effective until January 1, 2016, and does not operate retroactively. *See Moore v. Regents of the Univ. of Cal.*, 248 Cal. App. 4th 216, 245-47 (2016). Since Plaintiff was terminated prior to the effective date of the amendment, her retaliation claim is not actionable as pled in the complaint. *See id.*; Dkt. No. 50-1 (Rezvan Decl. ¶¶ 4, 20) (June 23, 2015 termination); Dkt. No. 41, Ex. A-2 (Starrett Dep.) at 241:13-242:17 (same).

In opposition, Plaintiff alleges a different basis for her retaliation claim: "The retaliation was not for Rezvan merely requesting accommodation, but for her opposing Starrett's discriminatory conduct by complaining about it, which is clearly a protected activity." *See* Opp. 22. The pre-amendment statute already prohibited retaliation for opposing forbidden practices, *see*

Cal. Gov't Code § 12940(h) (2015 version), which included the denial of a reasonable accommodation, *see id.* § 12940(m). In addition, making "informal complaints to management about discriminatory employment practices" is a protected activity under FEHA. *See Cal. Fair Emp't & Hous. Comm'n v. Gemini Aluminum Corp.*, 122 Cal. App. 4th 1004, 1018 (2004). Thus, Plaintiff's theory is at least colorable, but the Court must still answer two questions. First, was it proper for Plaintiff to raise her theory for the first time in opposition? And if so, applying the theory, is there a material dispute of fact regarding whether Plaintiff engaged in a protected activity?

The Court starts with the first question. Where a party, in opposition to summary judgment, raises issues beyond the scope of the complaint, the court should treat the matter as a request to amend the pleadings out of time pursuant to Rule 15(b) of the Federal Rules of Civil Procedure. *See Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014). Courts apply a very liberal policy of granting leave when justice requires, and assess five factors in making their determination: "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *See id.* (quoting *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004)). Here, three factors favor granting leave to amend. There is no evidence that Plaintiff acted in bad faith. Amendment would not be futile because as amended, the retaliation claim survives summary judgment. And Plaintiff has not amended her complaint before. In contrast, two factors weigh against amendment. There was undue delay because Plaintiff's new theory depends on her own communications from December 2014, obviously within her knowledge when the complaint was filed. *See* Opp. 9, 23. Moreover, Defendant was prejudiced by losing the chance to address Plaintiff's theory in its opening brief.[7] Ultimately, given that three of five factors favor granting leave to amend under the applicable liberal policy, the Court finds that Plaintiff may raise the new theory in opposition to the motion.

---

[7] In *Desertrain*, by contrast, there was no undue delay because the plaintiffs advanced their new arguments as soon as they received new documents from the defendants that alerted the plaintiffs about previously unknown facts. *See* 754 F.3d at 1154. Moreover, there was no prejudice because the defendants were already on notice that the plaintiffs were concerned with the issue later raised by the plaintiffs, even though not explicitly pled in the complaint. *Id.*

The Court must therefore assess the evidence presented regarding whether Plaintiff engaged in a protected activity. Plaintiff has proffered evidence that, in December 2014, she complained via email and phone to her former supervisor (Messelaar) that her new supervisor (Starrett) was "harassing" her about her medical condition and not allowing her the WAH accommodation that Messelaar had previously allowed when necessary due to Plaintiff's rheumatoid arthritis. *See* Dkt. No. 50-1 (Rezvan Decl.) ¶¶ 7-8, 15; Dkt. No. 50-3, Ex. 9 (December 10, 2014 email); *see also* Dkt. No. 50-3, Ex. 20 (Messelaar Dep.) at 125:12-23, 129:7-10 (confirming phone call took place "fairly soon after" Messelaar received Plaintiff's email). In contrast, Defendant argues that Plaintiff's email "does not assert that she requested any accommodation from Ms. Starrett, much less that Ms. Starrett refused to provide one" and that Messalaar's deposition testimony only shows that she spoke with Starrett regarding Plaintiff's email. *See* Reply at 11. Given that Plaintiff's email references her medical appointments and working from home, and that she has declared both that her call with Starrett "expanded on the complaints expressed in the email" and that that Starrett denied her WAH accommodation, the Court finds that there is a dispute of material fact regarding whether Plaintiff engaged in a protected activity.

### b. Causal Link

The Court must also assess Plaintiff's showing of a causal link between (a) her complaint to her former supervisor and (b) her termination. "A causal link may be established with evidence demonstrating that the employer was aware of the protected activity and the adverse action followed within a relatively short time." *Gemini Aluminum*, 122 Cal. App. 4th at 1018. "Adverse action" includes not only "'ultimate employment actions' such as termination . . . , but also the entire spectrum of employment actions that are reasonably likely to adversely and materially affect an employee's job performance or opportunity for advancement in his or her career." *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1054 (2005).

Here, Defendant argues that Plaintiff has failed to present evidence of a causal link between (a) Plaintiff's alleged opposition to unlawful discriminatory conduct by her supervisor (Starrett) and (b) an adverse action. *See* Reply at 11. However, Plaintiff has declared that her

14

former supervisor (Messelaar) told her new supervisor (Starrett) about Plaintiff's complaint in December 2014. *See* Dkt. No. 50-1 (Rezvan Decl.) ¶ 15; *see also* Dkt. No. 50-3, Ex. 20 (Messelaar Dep.) at 129:7-130:7 (confirming that Messelaar and Starrett spoke soon after Plaintiff's communications with Messelaar). Plaintiff has also proffered evidence of adverse actions starting soon thereafter: a written warning regarding her attendance (January 2014), which was an issue she had sought to address with her complaint; a negative performance review without any raise or bonus (February 2015); and ultimately, her termination (June 2015). *See* Dkt. No. 50-1 (Rezvan Decl.) ¶¶ 16-17, 20; Dkt. No. 50-3, Exs. 10-11. Plaintiff has raised a dispute of material fact regarding whether Starrett was aware of a complaint constituting a protected activity, and whether the temporal proximity between this complaint and the subsequent adverse actions was sufficient to constitute a causal link. Accordingly, summary judgment is not warranted on this basis on the causation prong either, and Defendant's motion is denied as to the retaliation claim.

### B.   Wrongful Termination in Violation of Public Policy

Defendant moves for summary judgment on Plaintiff's claim for wrongful termination in violation of public policy ("WTVPP"). *See* Mot. 23. "Disability discrimination can form the basis of a common law wrongful discharge claim." *City of Moorpark v. Superior Court*, 18 Cal. 4th 1143, 1161 (1998). Since summary judgment must be denied on Plaintiff's underlying FEHA disability discrimination claim, so too must it be denied on her WTVPP claim. *See Soria v. Univision Radio L.A., Inc.*, No. B263224, 2016 WL 6746448, at *18 (Cal. Ct. App. Nov. 15, 2016) (finding that Plaintiff's WTVPP claim overcame summary judgment because her underlying FEHA disability discrimination claim overcame summary judgment).

### C.   Intentional Infliction of Emotional Distress

Defendant moves for summary judgment on Plaintiff's intentional infliction of emotional distress ("IIED") claim on the grounds that it is preempted by the California Workers Compensation Act ("WCA"), or alternatively, that the claim fails on the merits. *See* Mot. 24. The Court does not reach the preemption issue because, even if the claim is not preempted, it cannot survive summary judgment on the merits. *See King v. AC & R Advert.*, 65 F.3d 764, 769-70 & n.3

15

(9th Cir. 1995) (affirming grant of summary judgment on IIED claim on the merits, and therefore not reaching alternative issue of whether the WCA barred the IIED claim).

"Intentional infliction of emotional distress requires (1) 'outrageous' conduct by the defendant, (2) that the defendant intend to cause (or recklessly disregard the probability of causing) emotional distress, (3) severe emotional distress and (4) causation." *Angie M. v. Superior Court*, 37 Cal. App. 4th 1217, 1225-26 (1995). Conduct qualifies as "outrageous" if it "is so extreme that it exceeds all bounds usually tolerated in a civilized society." *Id.*

In *Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 80-81 (1996), the Court affirmed the trial court's dismissal of the plaintiffs' IIED claims, where the plaintiffs alleged that, due to their age, they were subjected to an array of discriminatory employment actions, such as termination, lower compensation, and being sent warnings that they were "at risk" of being laid off. The court held that these personnel management actions were not "outrageous" and therefore the plaintiffs' IIED claims failed:

> Managing personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society. A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged. If personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination.

*Id.*

Many other courts have rejected IIED claims based on allegedly discriminatory personnel decisions, absent unusual circumstances. For example, in *Kasperzyk v. Shetler Sec. Servs., Inc.*, No. C-13-3358 EMC, 2015 WL 1348503, at *7-10, 12 (N.D. Cal. Mar. 25, 2015), the court granted summary judgment on the plaintiff's IIED claim, while denying summary judgment on his claims to have been fired and not rehired because of his physical disability. In so holding, the court proclaimed that "[a]t least in the absence of some extraordinary circumstances, a claim of employment discrimination does not, in itself, give rise to an IIED claim." *Id.* Similarly, in *Bradshaw v. Glatfelter Ins. Grp.*, No. 1:08-CV-01898OWWSMS, 2009 WL 1438265, at *4 (E.D. Cal. May 20, 2009), the court granted the motion to dismiss the plaintiff's IIED claim based on allegations of race discrimination, where the employer had allegedly failed to respond to her

16

harassment complaint, disciplined her, and fired her. The court held that these "personnel management decisions," despite their alleged racial motivation, did not qualify as "extreme and outrageous" under *Janken* and its progeny. *Id.* Likewise, in *Bartalani v. Blockbuster Entertainment, Inc.*, No. C-98-03943 SC, 1999 WL 1012383, at *9-10 (N.D. Cal. Nov. 8, 1999), the court held the plaintiff failed to create a triable issue of "outrageous" conduct on plaintiff's IIED claim, where the facts "at worst" showed that the plaintiff's employer paid him a low bonus, gave him a poor performance review, treated him rudely, and fired him for failure to remedy a break issue. Moreover, the court declared, "Even if [the plaintiff] could show that he was terminated due to his sexual orientation, courts have generally refused to extend liability for emotional distress to terminations based upon discriminatory motives unless accompanied by aggravating factors, such as racial or ethnic slurs." *Id.* at *10 (citing *King*, 65 F.3d at 770)).

Here, viewing the evidence in the light most favorable to Plaintiff, summary judgment is warranted on her IIED claim. Plaintiff has not pointed to any specific evidence raising a genuine issue of triable fact about whether Defendant's conduct was "outrageous." *See* Opp. 23-24.[8] The Court finds none, and is not required to "scour the record" looking for such evidence. *See Keenan*, 91 F.3d at 1279 (quoting *Richards*, 55 F.3d at 251)).[9]

---

[8] Instead, Plaintiff cites cases exclusively from the sexual harassment context to argue that employment discrimination is "outrageous" as a matter of law. *See* Mot. 24; *see also Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 618 (1989) ("Given an employee's fundamental, civil right to a discrimination free work environment (§§ 12920, 12921), by its very nature, sexual harassment in the work place is outrageous conduct as it exceeds all bounds of decency usually tolerated by a decent society."); *Accardi v. Superior Court*, 17 Cal. App. 4th 341, 353 (1993) (finding that the plaintiff's IIED claim arising out of sexual harassment was not preempted by the WCA). *Janken* recognized the distinction between harassment and discrimination, *see* 46 Cal. App. 4th at 62-65, and this distinction has been described approvingly by the California Supreme Court, *see Reno v. Baird*, 18 Cal. 4th 640, 645-57 (1998). Here, although Plaintiff complained that her new supervisor (Starrett) was "harassing" her about her medical condition, the conduct actually described involved allegations of a *discriminatory* personnel action (denial of WAH accommodation). *See* Dkt. No. 50-1 (Rezvan Decl.) ¶ 15. Therefore, the IIED claims arising from sexual harassment in cases like *Fisher* and *Accardi* are distinguishable from the IIED claim here. As for the last case cited by Plaintiff in support of her argument that employment discrimination is intrinsically "outrageous," the IIED claim there was not reviewed by the California Supreme Court. *See Gantt v. Sentry Ins.*, 1 Cal. 4th 1083, 1086 n.1 (1992), *overruled on other grounds by Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66 (1998)).

[9] *See also Garity v. APWU Nat'l Labor Org.*, 655 F. App'x 523, 525 (9th Cir. July 5, 2016) ("[Plaintiff] pleads no additional facts to support her IIED claim beyond those used to support her ADA disability discrimination claims, and though discriminatory employment practices are wrong . . . the tort of IIED is not intended to reach every discrimination claim." (internal brackets and

1    Plaintiff has put forward evidence that Defendant made allegedly discriminatory personnel
2    decisions, such as rejecting a more flexible WAH accommodation regarding her rheumatoid
3    arthritis, giving her a written warning and a negative performance review, denying her a raise or
4    bonus, and firing her. *E.g.*, Dkt. No. 50-1 (Rezvan Decl.) ¶¶ 12-20; Dkt. No. 50-3, Exs. 6, 10-12.
5    Yet without more, such personnel management decisions are not "outrageous" even if they arose
6    out of discrimination. *See Janken*, 46 Cal. App. 4th at 80-81 (termination, lower pay, warnings);
7    *Kasperzyk*, 2015 WL 1348503, at *12 (termination); *Bradshaw*, 2009 WL 1438265, at *4
8    (discipline, termination); *Bartalani*, 1999 WL 1012383, at *9-10 (low bonus, negative
9    performance review, termination). As in *Kasperzyk,* there are no "extraordinary circumstances"
10   present here, and therefore, Plaintiff's IIED claim, which arises out of alleged disability
11   discrimination in the handling of personnel decisions, cannot survive summary judgment. *See*
12   2015 WL 1348503, at *12.

### D.     Punitive Damages

If the applicable requirements are met, punitive damages are available for WTVPP claims and FEHA claims. *See Commodore Home Sys., Inc. v. Superior Court*, 32 Cal. 3d 211, 220-221 (1982). Punitive damages may be recovered "[i]n an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a) (West 2016). "'Malice' means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Civ. § 3294(c)(1). "'Oppression' means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." Civ. § 3294(c)(2). The "clear and convincing evidence" standard "requires a finding of high probability so clear as to leave no substantial doubt; sufficiently strong to command the unhesitating assent of every reasonable mind." *Scott v. Phoenix Sch., Inc.*, 175 Cal. App. 4th 702, 715 (2009) (internal

---

quotation marks omitted) (original ellipsis)). While unpublished Ninth Circuit opinions are not precedent, the Court considers this unpublished decision for its persuasive value. *See* Fed. Rules of Appellate Procedure Rule 32.1; CTA9 Rule 36-3.

quotation marks and ellipsis omitted).[10]  However, the "clear and convincing evidence" standard "does not impose on a plaintiff the obligation to 'prove' a case for punitive damages at summary judgment . . . though the higher evidentiary standard must be taken into account."  *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1053 (2009).  Finally, "[i]n the usual case, the question of whether the defendant's conduct will support an award of punitive damages is for the trier of fact, 'since the degree of punishment depends on the peculiar circumstances of each case.'"  *See id.* at 1053 (quoting *Hannon Engineering, Inc. v. Reim,* 126 Cal. App. 3d 415, 431 (1981)); *Capote v. CSK Auto, Inc.*, No. 12-CV-02958-JST, 2014 WL 1614340, at *12 (N.D. Cal. Apr. 22, 2014) (same).

Here, Defendant moves for summary judgment on the ground that Rezvan is unable to "present any evidence (let alone clear and convincing evidence) of malice, fraud, or oppression on [Defendant]'s part sufficient to trigger such [punitive] damages."  *See* Mot. 25.[11]  Having reviewed the evidence in the record, the Court cannot conclude as a matter of law at this stage that no reasonable jury could find clear and convincing evidence that Defendant acted with "willful and conscious disregard" of Plaintiff's rights (malice) or inflicted "cruel and unjust hardship" upon her "in conscious disregard" of her rights (oppression).  *See* Cal. Civ. Code § 3294(c)(1)-(2).  Instead, this is the "usual case" in which an assessment of whether Plaintiff's evidence can clear the high bar necessary to recover punitive damages must await the presentation of a full factual

---

[10] This standard applies at the summary judgment phase.  *Adams v. Allstate Ins. Co.*, 187 F. Supp. 2d 1219, 1230-31 (C.D. Cal. 2002); *see also Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1053 (2009) ("clear and convincing evidence" standard applies at summary adjudication phase); *Basich v. Allstate Ins. Co.*, 87 Cal. App. 4th 1112, 1118-1119 (2001) (same) (citing cases).

[11] The Court will not consider Defendant's contention in its reply brief that punitive damages were barred on the ground that Plaintiff's second supervisor (Starrett) did not qualify as a "managing agent" under Cal. Civ. Code § 3294(b).  *See* Reply 13.  Defendant's opening brief makes only a passing reference to section 3294(b).  *See* Mot. 24 (referring to "an officer, director, or managing agent").  The opening brief does not make the argument that Starrett fails to qualify as a "managing agent."  Raising this untimely defense on reply is not permitted.  *See Nw. Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 924 (9th Cir. 1988) (refusing to consider defense of novation under the "well established" principle that a party "cannot raise a new issue for the first time in the reply brief"); *see also Eberle v. City of Anaheim*, 901 F.2d 814, 817-18 (9th Cir. 1995) (ruling that issues not raised in opening brief may not properly be raised for the first time in reply brief).  Defendant obviously may raise this issue at trial via a motion for judgment as a matter of law, and the Court expresses no opinion as this stage as to the merits of that claim.

record at trial. *See Spinks*, 171 Cal. App. at 1053.

### III.   CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion for summary judgment.

**IT IS SO ORDERED.**

Dated: 12/15/2016

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge